IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLIE E. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05cv86-MHT |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff Charlie E. Jones ["Jones"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g) (2000).[1] Upon review of the record and the briefs submitted by the parties, the Magistrate Judge recommends that the Commissioner's decision be affirmed.

**I.  FACTS AND PROCEDURAL HISTORY**

Jones first filed for Disability Insurance Benefits ["DIB"] in October 2001 (R. 66-68, 80-113).  This application was denied (R. 37), and Jones did not pursue a review or appeal.

He again applied for benefits in May 2002, when he claimed an onset date of July 20, 2001 (R. 69) and alleged disability due to post traumatic stress, chest pains, high blood pressure, general stress and tendinitis (R. 118-19).  Currently, Jones is 52 years old.  He has

---

[1]Jones describes his claim as being for "Supplemental Security Income Disability Benefits and Social Security Disability Insurance Benefits" (Doc. # 20-1, p. 1), but the record reflects applications only for Disability Insurance Benefits (R. 66-71).

a high school education and vocational training in electrical wiring (R. 137), and he previously worked as an electrician (R. 130).

His application was denied initially, and Jones requested a hearing before an administrative law judge ["ALJ"] (R. 65). ALJ Frank M. Klinger held a hearing on 27 June 2003, after which he issued an unfavorable decision (R. 13-34; 438-70). The Social Security Administration Appeals Council ["AC"] denied Jones's request for review, rendering the ALJ's opinion the final decision of the Commissioner (R. 4-7). Jones then filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," *Kelley v. Apfel*, 185 F.3d 1211 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).[2] This is true despite the existence

---

[2]      In *Graham v. Apfel*, 129 F. 3d at 1422, the Court of Appeals stated that:

> Substantial evidence is described as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842

of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d

227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner

followed the appropriate legal standards in deciding a claim for benefits or that the legal

conclusions reached were valid." ***Miles***, 84 F.3d at 1400 (citations omitted).


### III.    DISCUSSION

***A.    Standard for Determining Disability***

An individual who files an application for Social Security disability benefits must

prove that he is disabled, which means that he is unable "to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2000); *see also* 20 C.F.R. §§

404.1512(a) (2005).

The regulations governing disability determinations provide a five-step sequential

evaluation process that the ALJ must follow to determine whether a claimant has proven that

he is disabled.  *See* 20 C.F.R. §§ 404.1520; *see also* ***Ambers v. Heckler***, 736 F.2d 1467, 1469

(11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala. 2002).  If

the claimant is not currently engaged in substantial gainful activity, the ALJ must determine

whether he suffers from a severe impairment that has lasted or is expected to last 12 months

───────────────

(1971).

or more.  §§ 404.1509, 404.1520(a)(4)(I)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1.

If the claimant's severe impairment(s) does not automatically qualify him for disability benefits, the ALJ must then assess his residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [his] limitations."  § 404.1545(a). Considering his RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of his past relevant work.  § 404.1520(a)(4)(iv).  If not, the ALJ must determine whether, considering his RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy.  §§ 404.1520(a)(4)(v), .1560(c).

## B.    *Application of the Standard: The ALJ's Findings*

After thoroughly discussing the legal standards and evidence in the record, the ALJ made the following findings:

> 1.    The claimant met the insured status requirements of the Social Security Act as of the alleged onset date.
>
> 2.    The claimant has not engaged in substantial gainful activity since the alleged onset date.
>
> 3.    The claimant has depression, polysubstance abuse with alcoholic neuropathy, delusional disorder, post-traumatic stress disorder, mild carpal tunnel syndrome, smoker's bronchitis, hypertension, gastroesophageal reflux disease, peptic ulcer disease, and chronic obstructive pulmonary

disease, which are "severe" impairments.

4.    The claimant's impairments, considered individually and in combination, do not meet or equal the severity of any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    The claimant's allegations of pain and functional limitations are not fully credible.

6.    The claimant retains the residual functional capacity to perform work at the light exertional level that requires no repetitive hand movements within the parameters specified in the PRT (Exhibit 3F at 11) and the MRFCA (Exhibit 2F) both completed by Dr. Eno.

7.    The claimant cannot perform any past relevant work.

8.    The claimant is a 49 year-old "younger" individual.

9.    The claimant has a high school education.

10.   The claimant has not acquired skills that will transfer to other jobs within the residual functional capacity set out above.

11.   The framework of Rule 202.2 of the Medical-Vocational Guidelines and Vocational Expert testimony demonstrate that the claimant has the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

12.   The claimant is not disabled within the meaning of the Social Security Act.

(R. 32-34).

Thus, Jones failed because the ALJ determined that he could perform jobs available in significant numbers in the regional and national economies.

Jones disagrees and contends that the ALJ's opinion is not supported by substantial evidence in the record.  Specifically, Jones contends that the ALJ:

1.   "relied on erroneous VE testimony concerning jobs that the Plaintiff is capable of performing according to the ALJ's RFC findings.";

2.   "failed to accord proper weight to the opinions of the Plaintiff's treating physicians, as well as the 70% VA disability rating";

3.   "failed to perform a proper evaluation of the Plaintiff's mental impairments as is required by 20 C.F.R. 404.1520 and SSR 96-8";

4.   "failed to perform a proper evaluation of the Plaintiff's credibility and subjective complaints";

5.   "erred in finding drug and alcohol abuse a 'material factor.'"

(Doc. # 20-1, p. 3-4).

## C.   *Analysis*

### 1.   The VE's Testimony

Jones contends that the ALJ's reliance on the VE's testimony was erroneous because the VE testified that Jones could perform jobs that required reasoning abilities that do not comport with the limitations included in the ALJ's hypothetical.  In other words, Jones contends that a person with "a moderate limitation in his ability to understand, remember and carry out detailed instructions" and who is "moderately limited in his ability to interact with the general public" could not perform the jobs (security guard, gate guard, and construction

flagger) the VE identified at his hearing (R. 165-66, 177, 465-67; Doc. # 20-1, p. 9).

In support of this contention, Jones relies exclusively on information provided in the Dictionary of Occupational Titles ["DOT"].  Thus, the conflict alleged is, in actuality, a conflict between the VE's testimony and the DOT.

Assuming *arguendo* that Jones is correct, as the claimant himself forthrightly acknowledges, "when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT" (Doc. # 20-1, p. 10).  **Jones v. Apfel**, 190 F.3d 1224, 1229-30 (11th Cir. 1990); *see also* **Lipson v. Barnhart**, 347 F. Supp. 2d 1182, 1189 (M.D. Ala. 2004) (McPherson, J.) (finding "meritless" a position virtually identical to the one Jones assumes in this case).  Thus, as a matter of law, the ALJ's reliance on the VE's testimony, notwithstanding its conflict with the DOT, was proper.

Jones fails, however, to persuade the court that the VE's testimony necessarily conflicts with the DOT.  According to the DOT, the flagger position identified requires an "02 Level Reasoning Development," which in turn requires a person to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations."  DICTIONARY OF OCCUPATIONAL TITLES, app. C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM   [hereinafter "DOT"]; DOT, 372.677-022, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B.HTM.

The DOT assigns the guard positions an "03 Level Reasoning Development," which

requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and d]eal with problems involving several concrete variables in or from standardized situations." DOT, app. C, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM; DOT, 372.677-030, -034, *available at* http://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOT03B. HTM.

A moderate limitation in the ability to perform the reasoning required for the jobs identified is not the equivalent of an *inability* to reason as necessary.[3] Thus, the ALJ's implicit conclusion that Jones could perform the level of reasoning that the DOT assigns to the jobs noted by the VE at Jones's hearing is not unreasonable.[4]

---

[3]The regulations do not define "moderate" other than as that term relates to "marked."

> Where we use "marked" as a standard for measuring the degree of limitation, it means more than moderate but less than extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C).

"Moderate" is elsewhere defined, in terms of abilities, as "of medium quality; mediocre." WEBSTER'S NEW TWENTIETH CENTURY DICTIONARY UNABRIDGED 1155 (2d ed. 1980). It is also defined as "keeping within reasonable bounds" and "mild." *Id.*

[4]Without articulating his underlying rationale, Jones also challenges the ALJ's conclusion that he could perform these jobs without having acquired the requisite transferable skills (Doc. # 20-1, p. 9). Jones fails, however, to identify skills necessary to perform the duties of a guard, which requires a maximum of three months of training, and construction flagger, which requires a maximum of one month. DOT, *supra*.

### 2.    Treating Source Opinion

Jones contends that the ALJ failed to accord proper weight "to the opinions of [his] VA treating sources" (Doc. # 20-1, p. 11).  He then refers only to Malissa [sic] Williams, Ph.D., whom he describes as his "treating psychologist."  *Id.*  For the purpose of this case, Dr. Williams's status as a psychologist is not settled because she treated Jones in her capacity as a nurse practitioner. Although Dr. Williams has earned her Doctorate of Philosophy, there is simply insufficient information to determine whether she was, in fact, a "licensed or certified" psychologist treating Jones in that capacity (R. 417).  Consequently, it is not clear whether Dr. Williams's opinion is entitled to the deference accorded treating sources.  20 C.F.R. § 404.1513.

Assuming her opinion can be considered that of a treating source,[5] Jones fails to demonstrate that the ALJ disregarded her opinion or accorded it less weight than the law requires.  *See **Phillips v. Barnhart***, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (quoting ***Lewis v. Callahan***, 125 F.3d 1436, 1440 (11th Cir. 1997) and requiring the ALJ to "articulate [his] reasons" for "disregard[ing] the opinion of a treating physician").  As the ALJ noted, the opinions on which he did rely, namely those provided by the "State agency expert examiners[,] . . . are fully consistent with the reports of the treating and examining physicians" (R. 28).  This conclusion is reasonable

---

[5]The opinion to which Jones cites is a "Mental Impairment Questionnaire" that provides little insight into his condition.  Dr. Williams noted that Jones suffers from a "[d]epressive syndrome characterized by . . . sleep disturbance, decreased energy, difficulty concentrating or thinking, [and] hallucinations, delusions or paranoid thinking" and "[r]esulting in . . . [d]eficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere)" (R. 417).  She concluded that Jones suffers from "Depression, NOS" and noted that the VA had awarded him "disability for schizophrenia."  *Id.*  Notably, she did not indicate the extent to which Jones exhibited any of the signs or symptoms noted.  *Id.*

9

and supported by substantial evidence.[6]

Neither Jones's arguments nor a thorough review of the record reveal any additional treating source opinions with which the ALJ's opinion conflicts.

### 3.     Veterans Administration ["VA"] Disability Determination

Jones also contends that the ALJ "failed to accord proper weight to the Plaintiff's VA rating" of 70% disability due to "schizophrenia chronic undifferentiated" (Doc. # 20-1, p. 11; R. 150).  *See*

***Bloodsworth v. Heckler***, 703 F.2d 1233, 1241 (11th Cir. 1983) ("The findings of disability by another agency, although not binding on the Secretary, are entitled to great weight.").

The ALJ accurately described the VA determination as follows:

Information received recently from the Department of Veterans

---

[6]For example, in assessing Jones's RFC, the ALJ adopted the limitations set forth by Dr. Ellen N. Eno, a non-examining agency psychiatrist, in a Psychiatric Review Technique Form ["PRTF"] (R. 177-78) and a mental RFC form (R. 31; 165-167; 177-179).  On the PRTF, Dr. Eno noted Jones's sleep disturbance, depression, delusions and previous diagnosis of "schizoid personality" (R. 179).  She concluded, therefore, that Jones's "Activities of Daily Living" are mildly limited and that he had moderate "Difficulties in Maintaining Social Functioning [and] . . . Maintaining Concentration, Persistence, or Pace" (R. 177).

On the mental RFC form, Dr. Eno indicated that Jones was moderately limited in the following areas:
- "ability to understand and remember detailed instructions";
- "ability to carry out detailed instructions";
- "ability to maintain attention and concentration for extended periods";
- "ability to interact appropriately with the general public";
- "ability to accept instructions and respond appropriately to criticism from supervisors";
- "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and
- "ability to respond appropriately to changes in the work setting."

(R. 165-66).  One could thus reasonably conclude that Dr. Eno's opinion was entirely consistent with Dr. Williams's.

Affairs reveals the claimant was awarded a 70 percent service connected disability reveals the claimant was awarded a 70 percent service connected disability effective June 2, 1999. The document states that the award is for service connected schizophrenia, chronic, undifferentiated type. The claimant received a 0 percent service connection for small sliding hiatus with gastroesophageal reflux claimed as ulcer. Supporting documents reveal the decision was made based on an examination dated November 20, 2002, from the VA medical center in Montgomery, Alabama, a VA examination dated March 16, 1997, and replies received from Blake Medical Center on April 14, June 27, and June 29, 2002. The replies received from Blake Medical Center do not include any treatment records. The VA examination reveals that the claimant was oriented 3 but indicate a tendency for visual hallucinations. After leaving the service, he continued to have feelings that there were objects with shadowy features moving in the periphery. He is reported to hear voices telling him to do things. The GAF scores 48 [sic] but he is competent for VA purposes (Exhibit 13E).

(R. 26; 150-59).

At Jones's hearing, Douglas McKeown, Ph.D., a clinical psychologist (R. 55), after acknowledging that he had reviewed Jones's medical records, concluded that they did not support a finding of schizophrenia (455-65). He also opined that the VA determination was based largely on Jones's subjective statements. *Id.*

On cross-examination, in response to a question posed by Jones's attorney regarding the significance of the VA determination, Dr. McKeown testified:

When you consider the medication that he's taking and his presentation of symptoms, they're more consistent with a delusional disorder with a primary somatic basis and not particularly consistent with a schizophrenic condition of a chronic nature. In the VA decision, my understanding would be that because it's service-connected, it would go back to his time of service in '74 and '78 and he has long periods of time of quite effective functioning, and schizophrenia generally does not wax and wane.

If you have schizophrenia, you have schizophrenia, and if the military determined that it began some time between '74 and '78 or

11

> manifested itself then, it would have continued to do so and would have impaired likely his ability to function at a much greater rate if it were active during the course of his life after that.
>
> However, his long-term history of somatic preoccupations and physical symptoms with some associated cognitive complaints would be much more consistent with a delusional disorder.

(R. 463-64).

The ALJ's conclusion that "[t]he diagnosis of chronic schizophrenia is not documented anywhere in the Veterans Administration records" is both accurate and consistent with Dr. McKeown's testimony, and it establishes a sufficient basis for not according the VA disability determination great weight. *See, e.g.*, ***DuBois v. Barnhart***, 137 Fed. Appx. 920, 921 (8th Cir. 2005) (affirming the Commissioner's decision not to award benefits despite a VA rating of 100% disability when "[t]he ALJ . . . evaluated the conflicting medical and lay opinions regarding [the claimant's] ability to work differently from the way the VA did"); ***Chambliss v. Massanari***, 269 F.3d 520, 523 (5th Cir. 2001) ("Because the ALJ considered the VA disability determination and set forth valid reasons for giving the determination diminished weight, we cannot say that the ALJ erred simply because it did not give 'great weight' to the VA disability determination.").

## 4.    ALJ's Evaluation of Mental Impairments

Jones's argument that the ALJ erred because he failed "to complete a [Psychiatric Review Technique Form], append it to the decision, or incorporate its mode of analysis into his findings and conclusions" (Doc. # 20-1, p. 12, quoting ***Moore v. Barnhart***, 405 F.3d 1208 (11th Cir. 2005)) is without merit.  As already noted, the ALJ expressly incorporated the PRTF and the mental RFC assessment completed by Dr. Eno, and the regulations and the Court of Appeals requires nothing

more (R. 31).  20 C.F.R. § 404.1520a(e);  *Moore*, 405 F.3d 1208.

The remainder of Jones's arguments present only a minimal challenge to the ALJ's opinion.  Jones's challenge to the ALJ's evaluation of his subjective complaints fails because the ALJ clearly, accurately, and exhaustively reviewed all of the evidence in the record and concluded that the evidence simply did not support Jones's allegations or the existence of a condition of such severity that it could reasonable give rise to his alleged symptoms (R. 28-30).  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Thus, the ALJ reviewed Jones's subjective complaints in accordance with the law in this circuit, and the record fully supports his decision to discredit Jones's allegations of pain.  *Id.*

Jones also claims that the ALJ incorrectly found his substance abuse to be a "material factor" (Doc. # 20-1, p. 14).  The court need not address this contention, however.  As the ALJ noted, regardless of Jones's substance abuse, the evidence simply does not establish that Jones is disabled, and, as should be clear by now, this conclusion is supported by substantial evidence.

The ALJ's opinion is exemplary in its thoroughness, accuracy and clarity, and the transcript of the hearing itself, at which two medical experts testified, indicates that the ALJ generously afforded Jones every opportunity to prove his disability.  Jones simply failed to do so, and he has failed to direct the court to any legitimate deficiencies in the Commissioner's final decision.

## IV.   CONCLUSION

Therefore, it is the RECOMMENDATION of the Magistrate Judge that the Commissioner's decision be AFFIRMED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before 1 March 2006.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on 30 September 1981).

DONE this 15th day of February, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED   STATES   MAGISTRATE   JUDGE